MONTILLA v. VAN SYCKEL ET AL.

APPEAL from the District Court of San Juan.

No. 116.—Decided March 17, 1905.

CONTRACT—DEFINITION.—A contract is an obligation assumed by one or several persons with respect to another or others to give something or render some service.

ID.—CONTRACT OF LEASE FOR AN INDEFINITE PERIOD.—In this case a contract was executed leasing a rural estate for an indefinite period and binding the lessor not to lease or sell the same property to any other person so long as the lessee should continue to pay the monthly rental, and the lessee, subsequently to the execution of the said contract, executed a notarial act binding himself to continue to lease the said property for a longer period than six years, in order that he might have the same recorded in the registry of property. It was held that the declaration of the said lessee made in the said act cannot be considered as a contract, because a consideration and the parties necessary to the existence of a contract are lacking.

ID.—NOVATION OF CONTRACT.—According to the terms of the contract referred to in the foregoing paragraph, the duration thereof was subject to the will of the lessee, and he could terminate it at any time by failing to pay the rent, and this power the lessor did not have, he having bound himself to respect the contract so long as the lessee should comply with the obligations he assumed, and under such conditions the declaration made in the said notarial act cannot be considered as a modification of the original contract, inasmuch as it did not alter the obligations of the parties and was only the exercise of a power by the lessee, which did not prejudice the rights of the lessor, and served to permit the admission of the contract to record in the registry.

ADMISSION OF CONTRACT OF LEASE TO RECORD.—The notarial act referred to being valid, the admission of the contract of lease to record in the registry of property was perfectly legal. (Affirming *Van Syckel* v. *The Registrar of Property of San Juan*, 3 P. R. Rep., 19.)

LEASE OF RURAL ESTATES FOR AN INDEFINITE PERIOD—TERMINATION OF CONTRACTS.—Law 3, title 10, of Book I of the *Novísima Recopilación* and the Spanish Decree of June 8, 1813, providing that leases of rural estates for an indefinite period may be terminated by either of the parties upon one year's notice in advance, have been repealed by the Civil Code of 1889, and also recently by the Civil Code of 1902.

JUDGMENT OF THE UNITED STATES PROVISIONAL COURT—FRAUD—WANT OF JURISDICTION.—A judgment of the United States Provisional Court of Porto Rico, rendered in an action submitted for its decision, even though the Supreme Court of Porto Rico might reverse such a judgment on appeal from a court over which it has appellate jurisdiction, will not be disturbed in a collateral action except for fraud or want of jurisdiction.

ASSIGNMENT OF MORTGAGE CREDIT.—Sections 1126 and 1127 of the Civil Code are not applicable to an assignment of a mortgage credit which cannot be considered as a simple payment, but must be deemed a subrogation.

ID.—SUBROGATION OF RIGHTS.—Sections 1177 and 1178 of the Civil Code are not applicable to an assignment of a mortgage credit, with respect to which the subrogation of the assignee to the rights of the assignor is not presumed, but, on the contrary, it is expressly recognized by article 152 of the Mortgage Law, which is not in conflict with the provisions of the Civil Code and which has not been repealed or modified thereby.

ID.—CONSENT OF DEBTOR.—In order to convey or assign a mortgage credit it is not necessary that the debtor shall give his consent to the transaction, nor is it necessary to specify in the instrument itself that a subrogation is effected, because the law provides that subrogation is the legal consequence of the assignment.

ID.—NECESSARY REQUISITES FOR THE ASSIGNMENT OR CONVEYANCE OF A MORTGAGE CREDIT.—The only requisites necessary for the validity of a conveyance or assignment of a mortgage credit are: That the debtor be notified; that they be effected by means of a public instrument, and that such instrument be recorded in the registry of property.

ADJUDICATION IN JUDICIAL PROCEEDINGS.—The mere constitution of a partnership, and the admission to record in the registry of instruments duly executed, as well as the execution of any other legal acts performed by one or more persons, in an effort to protect his rights and interests, cannot be deemed to be a conspiracy simply because they prejudice the rights of a third person, nor can they serve, without better evidence, as the basis of a declaration of nullity of an adjudication judicially made.

APPEAL—EVIDENCE.—The Supreme Court cannot consider on appeal documents which properly form no part of the record in accordance with the law, even though such documents may be included in the records.

ACTION—NATURE THEREOF.—The nature of an action brought in the district court cannot be changed in the appellate court after it has been considered and decided by the inferior court.

ACTIONS AT LAW AND SUITS IN EQUITY.—In accordance with the civil procedure in force in Porto Rico, actions are not divided into actions at law and suits in equity, and all actions must be brought in accordance with the provisions of the Code of Procedure.

ID.—EQUITY JURISPRUDENCE.—A system of equity jurisprudence, such as that administered in the federal courts of the United States and in some of the state courts, has no place in the system of laws in force in the Insular courts of Porto Rico.

The facts are stated in the opinion.

*Messrs. Hartzell* and *Rodríguez Serra,* for appellant.

*Messrs. Acuña* and *Pettingill,* for respondent.

MR. JUSTICE MacLEARY delivered the opinion of the court.

This appeal was filed in this court on the 24th of September, 1903, by Emilio Montilla, seeking to reverse a judgment rendered by the District Court of San Juan, on the 14th day of August, 1903, in a suit which he had instituted to nullify certain documents and decrees of court, in regard to an estate lying in the jurisdiction of Bayamón and called "Santa Cruz." This proceeding is the culmination of a protracted series of litigation, beginning in the United States Provisional Court on the 20th day of December, 1899, and continuing unremittingly in one form or another to the present day.

It began with a lease executed by Montilla to Van Syckel on the 23d of June, 1897, and involves various mortgages and

encumbrances with which the land was previously and subsequently burdened, most of them held by José E. Marxuach, who has been from first to last intimately involved in these suits. There have been from time to time changes in the counsel representing the parties, until finally the appellant is represented by Charles Hartzell, Esq., and Sr. Manuel Rodríguez Serra, and the appellees by Sr. Eduardo Acuña and Hon. N. B. K. Pettingill. The issues of law and of fact involved in this appeal may be better understood by a careful and thorough examination of the judgment of the trial court from which this appeal was taken and for that reason it will be set out in full. It reads as follows:

"Judgment.—In the city of San Juan, Porto Rico, on the 14th of August, 1903, there took place the public and oral trial of this declaratory action, which was prosecuted before this court between the parties, who are, on one side, as plaintiff, Emilio Montilla y Valdespino, of age, and a resident of this city, being defended by the attorney Pedro de Aldrey y Montolio; and on the other side, as defendants, José E. Marxuach, who was defended by the attorney Wenceslao Bosch, who was not present at the oral trial, and the firm P. Van Syckel & Co., and Paul Van Syckel, who were defended by the attorney Eduardo Acuña Aybar; regarding the nullity of several deeds and of an executory action.

"Finding that by an act, executed before the notary Mauricio Guerra Mondragón, on the 16th of December, 1899, Paulino Van Syckel stated that, by a deed of the 23d of June, 1897, he had made a contract of lease with Emilio Montilla y Valdespino, owner of the estate 'Santa Cruz,' situated at Bayamón, without fixing the duration of said contract, the same being left to the will of the said Paulino Van Syckel, provided that he should punctually pay the rent stipulated; that making use of the said power, he designated by an act, executed before the said notary, on the 21st of October, 1899, a period of more than six years for the duration of the contract from the time it was made, without relinquishing the right to continue the same after the aforesaid period should have expired; that Montilla has acknowledged a mortgage credit of $10,450 provincial money, in favor of José E. Marxuach, who prosecutes a lawsuit against his debtor and against the estate of 'Santa Cruz,' intending to sell the

same at auction, and as the obstruction of his work on the estate would prejudice his interests, he is determined to employ the means necessary to prevent such obstruction, without injuring the interests of the creditor, and enabling Montilla to comply with the contract of lease; he executes the said act, requesting the notary to require Marxuach to receive the amount claimed by him from Montilla and the interest due on same, and to subrogate Van Syckel in his mortgage rights, transferring the same as well as his actions against the debtor; to require Montilla to consent to said payment, and the transfer of the credit and interest, which Marxuach must make in favor of the party present, recognizing him as his subrogated creditor in place of the party making the transfer; there being evidence that such requisition was addressed to Marxuach, who replied citing articles 1158, 1159, 1210 of the Civil Code, and stating with regard to the same what appears from the deed; and when a requisition was addressed to Montilla, he replied that it was not convenient for him to accept the proposition of Van Syckel, and with regard to the six years of the term of lease it was the first notice he had received.

"Finding that Emilio Montilla, on the 5th of December, 1902, brought an ordinary action against José E. Marxuach, Pablo Van Syckel, and P. Van Syckel & Co., requesting to declare null and void the deed of the 16th of March, 1900, in so far as it transfers the mortgage guarantee, constituted in favor of Marxuach, on the estate 'Santa Cruz;' that of the 1st of June of the same year, relating to the establishment of the firm against which the action was brought, for the reason that a credit had been brought into the said firm or partnership, as a mortgage credit, which it was not; and further the inscriptions which by virtue of the aforesaid deed had been made in the registry of property; to declare that neither Pablo Van Syckel nor P. Van Syckel & Co., had ever been mortgage creditors of Emilio Montilla, as subrogated in the rights of Marxuach; that the firm has only a personal action against Montilla, for the amount in which he may have been benefited by the payment, which in his name was made by Van Syckel to Marxuach; to declare null and void the executory action which, relating to the mortgage, was prosecuted by the firm against Montilla; null and void the adjudication of the estate of 'Santa Cruz' to the said firm, and null and void the inscriptions made by reason of the said adjudication, in the register of property; and to declare extinct, in accordance with the law, the mortgages constituted in favor of Marxuach on the estate of 'Santa Cruz' ordering the cancellation of the inscriptions made of the said mortgages, and to

condemn P. Van Syckel and Company to pay an indemnity for the damages and losses the said firm may have caused by the executory action, which was improperly brought by the same, and to the payment of the costs; requesting in an additional petition to make a note of nullity on the margin of the inscription of the adjudication of the estate of 'Santa Cruz.'

"Finding that he bases the said action on the following facts: That Montilla possessed the estate of 'Santa Cruz,' at Bayamón, consisting of 314 *cuerdas* of land, which, until the 21st of December, 1901, was inscribed in his name, as the owner of said estate, in the registry of property; that on the said property he constituted the following mortgages: By a deed of the 19th of August, 1893, in order to guarantee to José E. Marxuach 4,000 *pesos* Mexican money, payable on the 18th of August, 1895, with interest at 10 per cent; that on the 28th of March, 1894, Montilla confessed to owe to the aforesaid Marxuach 3,000 *pesos,* Mexican money, payable on the 13th of March, 1897, constituting a new mortgage on the estate of 'Santa Cruz;' that by a deed of the 9th of August, 1894, he mortgaged for the third time the estate to Marxuach for $4,000, Mexican money, to whom he owed $11,000, Mexican money, for the three mortgages; the said estate being appraised by mutual agreement at $23,000, Mexican money; that on the 23d of June, 1897, Montilla and Paul Van Syckel made a contract of lease of the estate of 'Santa Cruz,' for $105, provincial money, no period of duration being fixed in the said contract, and Montilla having no right to lease or sell to another person the estate so given in lease, under the penalty of payment of the damages and losses that might be caused to Van Syckel; that on the 21st of October, 1899, Van Syckel by himself and without the consent of the other party to the contract, changed the conditions of said contract, and modified the 7th clause of the same, binding himself to lease the estate for more than six years; and although the registrar refused to inscribe the said act, the court of San Juan ordered the inscription to be made; and an appeal having been taken from said order by the registrar, a decison was rendered in the case, ordering the inscription to be made, although the clause not to sell the estate, which was contained in the contract, was held to be null and void; that Marxuach, at the beginning of December, 1899, when his mortgages were due, brought an executory action for the collection of the same; that on the 16th of the said month of the year referred to, Paul Van Syckel addressed a requisition to Marxuach and Montilla, through the notary, as set forth in the act mentioned in the first finding; that Van Syckel,

who wished to retain possession of the estate, applied at the beginning
of the year, 1900, to the United States Provisional Court, requesting
that the court prohibit Marxuach from attaching the estate of 'Santa
Cruz,' in order to collect the amount due him, and to order him to
accept the payment which Van Syckel offered for the debt against
Montilla, and to order the latter not to attempt to sell the said prop-
erty; Van Syckel basing his request on the clause of the contract of
lease relating to the prohibition of alienating the estate; that after
the estate had been sold, Montilla would have nothing with which
to indemnify him for the damages and losses sustained, as he was
poor, knowing positively that he was a co-owner of a beautiful house
in San Juan; and the aforesaid provisional court granted the request
of Van Syckel; that in the said petitions and decision it was not in-
cluded that he be declared subrogated; that on the 16th of March,
1900, in a deed executed before the notary Palmer in which the
decision of the United States Provisional Court was inserted, Mar-
xuach was compelled, against his will, to accept the payment made
to him by Van Syckel for Montilla, in spite of the opposition of the
debtor; wherefore, the said deed is not a deed of cession of a mort-
gage credit, but a deed of acceptance of a payment made by a third
party; that on the 1st of June, 1900, before the same notary Palmer,
Paul Van Syckel and Sobrinos de Ezquiaga established the firm P.
Van Syckel and Company, a civil agricultural company for carrying
on a dairy business, and into which firm or partnership Van Syckel
brought as capital the credit which Marxuach had against Montilla;
that in September, 1901, P. Van Syckel and Company presented to
this court a writing requesting an attachment by means of mortgage
proceedings against Montilla, for the collection of the amount due to
Marxuach, and the latter sold to Van Syckel; and the court by a writ
of the 11th of September ordered that a requisition of payment be
issued, which was done on the 21st, while the proceedings of attach-
ment were being continued; and on the 21st of December the owner
was notified of the adjudication to P. Van Syckel and Company for
$8,740, American money, after deducting the preferential claims,·
which was not sufficient to enable them to collect the amount they
claimed; the law being that the court was competent because the case
was the continuation of the executory action, of which the court had
had cognizance, for which reason, as well as on account of the second
number of section 459 of the Law of Civil Procedure a conciliation
was unnecessary; that P. Van Syckel and Company had no ground to
bring the executory action prosecuted by them, because they were not

mortgage creditors of Montilla, who did not owe them anything, and yet was compelled to pay them in consequence of a real action; that if Van Syckel paid to Marxuach what Montilla owed to him he did so under the provisions of the Civil Code; having paid against the express will of Montilla, he did not subrogate himself in the rights of the creditors according to section 1158 of the said Code; that number 3 of section 1212 of the Code referred to, is not applicable to this case, since the said section establishes only a presumption in cases where there is no evidence of the express will or opposition of the debtor and refers more to a third party, who may have a direct interest in the obligation, for which reason the deed of transfer of the mortgage credit, and that by which Pablo Van Syckel established the agricultural company, are null and void; because an act, which is null and void, cannot originate acts and effects that are valid; and as a consequence of the fact that the credit referred to was brought into the aforesaid partnership the inscription made of said credit in the registry of property is also null and void; and section 36 of the Mortgage Law is not applicable to this case, but No. 1 of section 37; that the United States Provisional Court did not decree nor was it requested to decree that Paul Van Syckel, by reason of the transfer of the mortgage credit, should be considered as having subrogated Marxuach in all his rights and actions; the party referred to citing besides section 175 of the Regulations of the Mortgage Law, and alleging further that since P. Van Syckel and Company have not accurately stated in the executory action the necessary facts as to the manner in which they had paid Marxuach, inasmuch as in that event said action would not have been admitted, they must pay the damages and losses caused by them, in accordance with section 159 of the Regulations of the Mortgage Law.

"Finding that after the action had been admitted, and an official communication addressed to the registrar of property to enter the notice on the margin of the inscription as requested by the plaintiff, Marxuach answered, requesting that the action be dismissed and the costs imposed upon the plaintiff; he stated that he agreed with the facts set forth in the action with regard to him, and also with the stipulations contained in the deed of the 16th of March, 1900, which he at once ratified in all its parts, doing so in a definite manner and without reservations of any kind; and he further stated that, when it was ordered by the United States Provisional Court, that he should accept from Van Syckel the amount for which the attachment was made and the costs, he executed the aforesaid deed, which

he had no ground to refuse to do, since he was ordered to do so, and no damage was caused to him by the deed referred to, the law applicable to this case being sections 1232, 1267, 1269, and 1270 of the Civil Code, and section 152 of the Mortgage Law.

"Finding that Paul Van Syckel and P. Van Syckel and Company filed a reply, requesting that the action be dismissed, with the costs against the plaintiff, and stating the following facts: That Montilla constituted the three mortgages above mentioned in favor of Marxuach; that he later on made the contract of lease with P. Van Syckel, whereby he leased to the latter the estate of 'Santa Cruz,' which was limited to 279 *cuerdas;* that the said contract was made without fixing a period for its duration, and being of the opinion that said right (that is, the right to fix the period for the duration of the contract) must be secured with regard to the third party, and fearing that the deed might not be inscribed for lack of expression of his will, he executed the act referred to in the foregoing findings, fixing the period of the contract of lease at six years at least, and making it appear as set forth in the findings referred to; that as the said act did not contain any substantial or accidental alteration of the contract of lease, but only his intention, which depended exclusively on his will, Montilla had not to intervene in the matter; that the registrar of property did not inscribe the deed because no description was made of the estate; because the deed contained the illegal agreement not to alienate or to mortgage the property, and because no period had been fixed for the duration of the lease; that the district court ordered the inscription to be made, and after an appeal had been taken by the registrar of property, from the order of the district court, said order was affirmed by the Supreme Court, and carried into effect; that Montilla, wishing to render the contract ineffective, entered into an agreement with Marxuach, by which the latter bound himself to attach the property for his credit and at the sale of the same at auction to pay 24,000 *pesos,* provincial money, and, further, not to cede or transfer his credit without the consent of Montilla, and that the obligations of the creditor should cease if there should be a bidder, the debtor having one year during which to look for a purchaser, and if he should not find one, the proceedings of judicial compulsion should continue; the tendency of this agreement, in which all the benefits were for the proprietor and none for the creditor, being the cancellation of the contract of lease; for as Francisco J. Marxuach, on the 4th of November, 1897, had applied to Paul Van Syckel, offering him the transfer of the credits of his father, it must

be affirmed; that on account of this agreement and the judicial proceedings instituted by Marxuach for the collection of his credit, Paul Van Syckel addressed by means of a notarial act a requisition to Marxuach and to Montilla, in the manner expressed in the first finding, entering for the same reason before the United States Provisional Court an action against Marxuach and Montillà, and on the 1st of March, 1900, a judgment was rendered ordering that the mortgage credit, which for 10,500 *pesos* had been constituted by Montilla in favor of Paul Van Syckel, be ceded and delivered to the latter, which decision was amended so as to extend its effects, which had been limited to the date of the 23d of June, 1903, over the entire period during which the lessee should be in possession of the estate, in accordance with the conditions of the contract of lease and subsequent notarial acts; that the aforesaid judgment was final, and Marxuach, on the 16th of March, 1900, made the cession and transfer to Paul Van Syckel of the mortgage credit against Montilla, with his respective property rights in the mortgaged property; that the aforesaid Van Syckel established the firm P. Van Syckel & Company and brought into the said firm or partnership his mortgage credit against Montilla, whereby the said firm became the mortgage creditor of the estate 'Santa Cruz;' and as the debtor did not even pay the interest, an executory action was brought and prosecuted in accordance with the procedure provided by the Mortgage Law; and the public sale of the estate having been announced for 23,000 *pesos* provincial money, which price had been fixed by the common consent of the parties, the estate was adjudicated for two-thirds of the said price, $1,541.39 being deducted for preferential liabilities and taxes; that Montilla brought a declaratory action before this court, requesting the annulment of the aforesaid executory action, but said declaratory action did not succeed in this court, nor in the Supreme Court, the same as another litigation which was prosecuted between Montilla and Van Syckel with regard to the meaning of a clause of the contract of lease; the law applicable to the case being sections 4, 1228, 1425, 1269 and 1528 of the Civil Code, section 152 of the Mortgage Law and the judgments of the Supreme Court of the 2d of July, 1872, the 30th of April, 1884, and the 4th of November, 1897; that if there is consent, a licit object and cause, and if the contract does not contain any defect making the same null or invalid, the cession is valid, and that a *res judicata* is held to be true.

''Finding that when the court proceeded to hear the evidence, that of the plaintiff consisted of a certificate from the secretary of the

Supreme Court containing a copy of the decision rendered in the appeal taken by the Registrar of Property of San Juan, by which decision the notice written by the said registrar at the foot of the deed of lease of the estate of 'Santa Cruz,' at Bayamón, executed by Montilla, was annulled, the registrar being ordered to enter a cautionary notice of suspension for the amendment of the defects contained in said deed of lease, in case it should be so requested by the interested party, as the lease for an indefinite time, referred to in section 1577 of the Civil Code, could not be misunderstood; but as the inscription is defective, because the estate leased is not described in it, and as said defect can be amended, a cautionary notice of suspension can and must be entered in order to amend the same within the legal term, while the deed can not be inscribed in so far as the condition not to alienate the property and the clause prohibiting to mortgage the same are concerned; but as this does not imply the nullity of the title or of the obligation, it does not constitute a defect which obstructs the inscription, it appearing from the certified copy that the Military Governor, George W. Davis, transmitted the documents relating to the contract of lease made by Montilla and Van Syckel, requesting attention to the certified copy of the decision of the District Court of San Juan, and saying that it is urgent that this matter be determined in the shortest possible time, because of the existence of a great number of analogous cases; and that the conduct of the registrar of property, refusing to inscribe the deed, hinders the course of transfers of property, and that he (the Military Governor) hopes that a special case will be made of this matter, and that the same will be decided as soon as possible by the Supreme Court.

"Finding that the plaintiff likewise incloses the decision relating to a temporary restrictive order, issued by the judge of the United States Provisional Court in this island, on the 20th of December, 1899, and directing that José E. Marxuach, his agents, servants, lawyers, and any other person, abstain from assisting or trying to assist Emilio Montilla to sell or mortgage the estate of 'Santa Cruz,' and that the proceeding of attachment against the mortgaged estate should be continued; besides, on the 4th of January, 1900, Marxuach presented a motion to revoke the restrictive order with its effects, the said order being annulled by the court on the 10th of January, 1900, after having heard the arguments of both parties; and the court further ordered that a temporary injunction be issued as requested by the plaintiff, who was to furnish a bond in the penal sum of 2,500 *pesos;* and after other acts had been performed the final judgment was rendered

by which it was decreed and ordered that Marxuach should cede and deliver to Van Syckel the mortgage for 10,500 *pesos*, provincial money, which mortgage had been executed on the 15th of May, 1897, and also any amount of interest due on the said sum from the date of this judgment until payment; that Marxuach be warned that he will have to refrain from any proceedings before the District Court of San Juan, and any other court, with regard to the said mortgage, and to desist forever from carrying into effect any or all of the agreements he may have made with the codefendant, Montilla, for the sale of the property until the 23d of June, 1903, warning Montilla that he must submit to all that has been determined and agreed to according to the contract of lease made by him with Van Syckel; that he must not sell or try to sell, mortgage or try to mortgage the aforesaid property, or any part of the same, until the date above mentioned, viz, 1903, and that he must desist from carrying into effect and from trying to carry into effect any agreement for the execution of the mortgage before the District Court of San Juan or before another court; there being inserted in the judgment, at the request of Van Syckel, after the words 'until the 23d of June, 1903,' 'or until the plaintiff shall cease to be the lessee of the estate, under and in accordance with the contract of lease.'

"Finding that he incloses, besides, an authenticated copy of the deed of cession of the mortgage credit, dated the 14th of March, 1900, which deed was executed by Marxuach in favor of Van Syckel, and in which is copied that part of the judgment of the United States Provisional Court which contains the ruling of said court; an authenticated copy of the notification addressed by the notary to Montilla relating to the deed establishing the firm or partnership of P. Van Syckel & Company, into which partnership were brought the mortgage credits which had belonged to Marxuach; a certified copy of the act of reconciliation, dated December 14th, 1901, which was issued at the request of Montilla against Van Syckel, who did not appear in court.

"Finding that the secretary of this court has issued a certified copy of the report of the registrar of property, which had been demanded by the said court, in the administrative appeal taken by Van Syckel; another certificate, stating that it appears from the executory proceedings relating to the mortgage, which proceedings were prosecuted by Van Syckel against Montilla, that the public sale of the estate of 'Santa Cruz' was asked and announced with the condition, among others, that the right of lease to 279 *cuerdas* of land of the said estate,

in favor of Van Syckel, was to be respected, for so it appears from the writing presented by the party making the attachment and from. the *Gazette.*

"Finding that the Hon. Treasurer certifies that it appears from the appraisement of 1902-1903 that P. Van Syckel declared that he possessed in the ward of Juan Sánchez, of Bayamón, 316 *cuerdas* of land, appraised at $13,200; a wooden dwelling house, appraised at $700; an old warehouse, at $200; one building, used for a dairy, at $400; and one house, in bad condition, at $100; the said properties being encumbered by a quitrent of the state, for 237 *pesos,* a chaplaincy 230, and a mortgage 407; three *'masas'* and seven old troughs (machinery for grinding sugar), 250 *pesos;* various animals, 3,594 *pesos,* and two milk carts and one ordinary cart, 75 *pesos;* upon all of which was assessed a tax for the Insular Treasury of $37.98; the appraisement of 1901-1902, corresponding to Montilla, shows the following amounts: For 316 *cuerdas* of land in the same ward and town, $16,300; a dwelling house and an old warehouse, the same prices as stated before the same; the building used for a dairy, 500 *pesos;* three *'masas,'* 150 *pesos,* and 7 old troughs, 350; the said properties being encumbered by quitrents and mortgages for $8,571, from which are deducted $1,140, which are paid by P. Van Syckel, $1,500 being officially deducted from the said properties, and for taxes, $32.80 per year.

"Finding that from the evidence by confession, according to the declaration made by José E. Marxuach, it appears that on the date on which, in the name of his son, he wrote the letter to Van Syckel the negotiations proposed to him were convenient to him, but not later on; that when Van Syckel brought the executory action it was not convenient for him to transfer his credit to him, and he would not have done so, because he had a contract with Montilla, and he refused to comply with the demand made by Van Syckel in the requisition he addressed to him, and which demand he also made before the United States Provisional Court; that when he executed the deed of transfer he did not do so voluntarily, but by order of the said court; and that the private contract with Montilla had been made in order that, in case there should be no bidder at the public sale, the estate might not be adjudged to him for two-thirds of the price, but for the amount stipulated by him; and the manager of P. Van Syckel & Co. declares that he believes that he did not bring any benefit into the partnership, except the continuation of the lease of the estate referred to; that he knows that the said estate is leased at the present time, but that he

cannot precisely state the rent, the lease being the benefit; he knows that a mortgage has been cancelled, the amount of which he does not remember; that they have improved the estate by plantations of *malojillos* (a kind of grass used for feeding horses while said grass is still green), and he believes that also tobacco has been sown, some part of the estate being used as pasture land, for growing *frutos menores* (beans, vegetables, and the like); that he is a partner of the firm of Sobrinos de Ezquiaga, since the 1st of January, 1902, and that he returned to this place on the 28th of December of the said year.

"Finding that the evidence presented by witnesses was as follows: One witness testifies that when Marxuach brought the executory action he was disposed to pay at the public sale 28,000 *pesos,* provincial money, free from encumbrances, and when Van Syckel attached the estate he would not go to the public sale on account of the encumbrance of the contract of lease; he believes it is a good bargain to acquire the estate for 28,000 *pesos,* provincial money, and is disposed to pay that amount; that he was several times negotiating with Montilla and Van Syckel in regard to the estate, but that the latter has obstructed the negotiations. Upon being further questioned, he said that he was a partner of the firm of M. Pieras & Company, which commanded a capital of $35,000; that the estate was intended for the said firm and that the offers referred to were made by him in 1900; another witness testifies that at the end of 1902 his sister was disposed to pay for the estate $18,000 in cash, and upon being further questioned he stated that he spoke, in the name of his sister, with one whom he believes to be a clerk of Ezquiaga, who told him to apply to Van Syckel.

"Finding that the defendant presented as evidence a certified copy of the judgment rendered by the United States Provisional Court for this Island, and another authentic copy of the deed of transfer of the mortgage credit executed by Marxuach in favor of Paul Van Syckel, on the 16th of March, 1900, which documents have already been mentioned in the evidence presented by the plaintiff; a certified copy, issued by the secretary of the Supreme Court, of the action brought by Emilio Montilla against P. Van Syckel & Co., requesting the annulment of the summary executory proceedings which on account of the mortgage credit were being prosecuted by the latter against the former, and requesting further that they be condemned, besides, to indemnify Montilla for the damages and losses caused to him by the said attachment; a copy of that part of the judgment of this court which contains the rulings of the court by which the said action is

dismissed, P. Van Syckel & Co. being acquitted and the costs being imposed upon the plaintiff; and a copy of the ruling of the judgment in cassation, by which it is declared that there is no ground on which to decide the appeal in cassation taken by Montilla; the latter being condemned to the payment of the costs; a certified copy of the order by which the estate of 'Santa Cruz' is adjudicated to P. Van Syckel & Co. for $8,740, which is two-thirds of the value fixed by the appraisement, with deduction of the former encumbrances; a certified copy of the ruling of the judgment by which the action prosecuted by Pablo Van Syckel against Emilio Montilla is declared to be well founded, in consequence of which the latter was compelled to pay the taxes of the leased estate, with the exception of those on the industries carried on by Van Syckel on said estate; a certified copy of. the rulings of the Supreme Court declaring that there was no ground on which to decide the appeal in cassation taken from the judgment referred to; and a certificate of the registrar of property inserting literally in number 14 of the estate of 'Santa Cruz' the contract of lease in favor of Pablo Van Syckel, by virtue of the decree issued by the Chief Justice of the Supreme Court, the notice written on the margin of the said inscription of the contract of said lease, executed by Van Syckel in favor of Ignacio Rosales; the conversion of the aforesaid notice into a definite notice; and, finally, a private document executed by Fernando Montilla and José E. Marxuach, to be added to the other documents, in order to serve as evidence, together with the confession and evidence of the witnesses offered by him.

"Finding that José E. Marxuach, upon being shown the copy of the private document mentioned in the foregoing finding, replies that without being able to affirm it, it seems to him to be the document which was executed by him with Montilla, and that he ratifies the statements made by his lawyer when the latter replied to the action in his name; the other defendant, Montilla, declared with regard to the private contract referred to, which was made by him and Marxuach, that clause 2 was the basis of the contract, which was set forth in the private document, but that he does not remember the number which the aforesaid clause had in the document referred to; that said document was signed by several witnesses and was drafted by him and Marxuach; that he has had several litigations with Van Syckel, without remembering the number of the same, and that the said 2d clause reads as follows: 'That if in case of a public sale of the estate there should be no bidder, or if the bidder should not offer more than 24,000 *pesos,* provincial money, Marxuach shall give said

sum under the conditions that will be stipulated;' the private contract being examined by a witness, said witness declared that it was in his handwriting, and that it was executed by Montilla and Marxuach, and that he made a copy of the original, which was given by Marxuach to Van Syckel; upon being further questioned he replies that he cannot affirm that the signatures which appear in the document are genuine, and that he was an employee of Van Syckel; and another witness testifies that it may be that he had been a witness to the private contract referred to; that he cannot remember whether it was the contract, a copy of which is shown to him; that he does not remember either whether he signed the document or not, but that he is inclined to believe that a document existed, of which the one produced in this case is a copy, without affirming that it is literally copied from the original; and another witness declares that he is not nor has ever been charged with the management of his father's affairs; that the letter shown to him was written by him by order of his father, the defendant Marxuach, which letter, under date of the 31st of November, 1897, was addressed to Van Syckel and signed Francisco J. Marxuach. Said letter reads as follows: 'Having been informed that you have leased from Montilla the estate of "Santa Cruz," I offer you the transfer of the mortgage which I have on the same. If it should be convenient for you, advise me, in order that I may speak to you regarding the details.'

"Finding that after the evidence had been heard, the lawyers of the parties who attended the oral trial presented their arguments, alleging in the same what they deemed convenient for their respective rights.

"The presiding judge, Juan Morera Martínez, being the *ponente* in this case.

"Concluding that, although by section 152 of the Mortgage Law it is ordered that any alienation or cession made to a third party of the total or partial amount of a mortgage credit must be brought to the knowledge of the debtor, the omission of this formality is not a cause of nullity of the deed by which such alienation or cession is made, but only entitles the cessionary to demand from the ceding party the damages he may have suffered in consequence of such omission in conformity with the provisions of section 154 of the same law and of the correlative sections of its regulations; and in the present case there is a greater reason still why it is not proper to consider such omission as a cause of nullity of the deed referred to, inasmuch as the cession was made owing to the judicial decision rendered by the

United States Provisional Court, at the request of Van Syckel, against the mortgage creditor and the debtor of the said credit, Emilio Montilla Valdespino, who, as defendant, had knowledge of the said judicial decision at the time it was rendered.

"Concluding that the formality of notification is required in order to prevent that the debtor, by reason of his not having any knowledge of the transfer made, may pay the original creditor, to the prejudice of the cessionary, and this is the reason why said section 154 was enacted, from which it is to be inferred that the mortgage creditor, not being reimbursed when the time arrives to demand the amount of his credit, and having the right to alienate the same, it is obvious that he could transfer the credit to a third party, in accordance with the said Mortgage Law, as alleged by Marxuach in his reply to the action, which he ratified at the oral trial, when he said 'that he made the said transfer not only because it was so ordered by the United States Provisional Court, but because the said transfer did not cause him any prejudice, inasmuch as it enabled him to collect at once what he would have to collect otherwise at the termination of the suit against Montilla.'

"Concluding that the record of the requisition of the 16th of December, 1899, corroborates the aforesaid statement, since Van Syckel requested that Marxuach be required to subrogate him in his rights as mortgage creditor, and to transfer to him all the rights pertaining to him, and his actions against the debtor, which is precisely what he grants to him in the deed of cession of the 16th of March, 1900, since we read in the same: 'He cedes and transfers the mortgage credits with his respective property rights, acquired by reason of the mortgage, and the interest, expenses and judicial costs, in case of a reclamation, without any reservation whatever, having therefore the right of action, as not all of this is included in section 1158 of the former Civil Code and 1126 of the Code now in force.

"Concluding that since the transfer of the mortgage credit, which is the subject of this litigation, is valid and effectual because of having the requisites that are essential for its validity, it is not possible to declare its nullity, nor that of the establishment of the agricultural partnership of P. Van Syckel & Co., for the nullity of the latter being based upon the nullity of the former, it is evident that if the transfer of the mortgage credit is not null and void, the establishment of the said firm cannot be null and void either, and since the credits which have been transferred subsist and preserve the mortgage character, it

is not proper to cancel the inscription of the same in the register of property, as requested by the plaintiff.

''Concluding that the nullity of the executory action relative to the mortgage prosecuted by P. Van Syckel & Co. against Emilio Montilla Valdespino and the nullity of the adjudication to them of the estate of 'Santa Cruz,' as well as that of the inscriptions made by virtue of said adjudication, are improper, because P. Van Syckel & Co. in the executory action relating to the mortgage have accurately stated the facts that are necessary in said action, as may be seen by the text of the same, wherein it is stated that the cession and transfer have been made by the deed of the 16th of March, 1900, for the price of $11,697, provincial money, it being later specified what portion of said amount is the capital and what the unpaid interest due at the rate fixed in the contract, and because no facts whatever have been alleged nor proven which show the nullities the declaration of which is requested.

''Concluding, besides, that there exists an executory judgment declaring that there is no ground for the nullity of said executory action, which nullity had been requested in another action for violation of the general orders relating to the suspension of the summary procedure of the Mortgage Law, because the estate had been sold at public auction without previous appraisement by experts, and because the party making the attachment had not definitely stated the exact amounts collected on account of the credit for which the attachment was made, nor had made the protest provided in the last paragraph of section 169 of the Mortgage Law, the requisition requested should have been refused.

''Concluding that, on account of the aforesaid reasons, the action must be declared unfounded in all its points and the costs imposed upon the plaintiff, and that since on admitting said action it was ordered that section 88 of the Regulations of the Mortgage Law should be complied with, it must be ordered that the provisions of section 89 be complied with, in order that the notice entered on the margin of the inscription referred to may cease to produce its effect in the registry of property.

''We adjudge that we should declare, and do declare, that the action brought by Emilio Montilla Valdespino is unfounded in all its points, and in consequence of this we acquit José E. Marxuach, Pablo Van Syckel, and P. Van Syckel & Co. of the same, with the costs against the plaintiff; and after this judgment has become final, let section 89 of the Regulations for the execution of the Mortgage Law

be complied with. Thus, by this, our judgment, we pronounce, command and sign.''

On this appeal Montilla, the appellant, maintains the following propositions, which for lack of a definite assignment of errors, may be gathered from the printed brief filed by his counsel, that is to say:

1st. The declaration made by Van Syckel, on the 21st of October, 1899, before a notary, that he would elect to hold the lease, which had been made to him for an indefinite term, for at least six years, is null and void.

2nd. That the inscription of the lease, made by Montilla to Van Syckel, in the registry of properties, being contrary to the interests of appellant and unwarranted by law, should be annulled.

3d. That the decree of the United States Provisional Court rendered on the 1st day of March, 1900, in favor of Van Syckel and against Montilla and Marxuach, was erroneous, without warrant of law, without jurisdiction, and utterly void.

4th. That the transfer made of the mortgage, held against the estate ''Santa Cruz'' by Marxuach to Van Syckel, on the 16th of March, 1900, in conformity with the decree of the Provisional Court, was involuntary and did not effect a subrogation of Van Syckel to the rights of the mortgagee for want of the consent of both Montilla the mortgagor and Marxuach the mortgagee.

5th. That the foreclosure and sale of the estate at the suit of Van Syckel, after the transfer of the mortgage, was the result of a conspiracy and was based on a void judgment, and is itself void.

6th. That all the inscriptions of the several decrees and documents made from time to time in the registry of properties, are for various reasons illegal and without effect.

7th. That the district court erred in not treating this as·

an equitable action and in only passing upon a single one of the many important questions raised in the record.

The several propositions advanced by the counsel for appellant will be examined in the order indicated.

1. Was the declaration made by Van Syckel on the 21st of October, 1899, fixing the duration of the lease at six years or longer a valid instrument? On examining the contract of the 23d of June, 1897, we find that it is a lease in the ordinary form, granting to Mr. Van Syckel the occupancy of the estate "Santa Cruz," upon the payment of a monthly rental of 105 *pesos,* about $65, and is not at all extraordinary except clause seven which reads as follows: "This contract having no fixed duration or term, it is an expressed condition that so long as Mr. Van Syckel shall comply with the payment of the monthly rental, Mr. Montilla shall be bound to respect this contract having no right to lease to another person nor sell the property leased, under penalty of the payment of indemnity for damages which may be caused to the lessee Van Syckel."

Van Syckel, wishing to have his lease admitted to the registry of properties, found that the 5th paragraph of article 2 of the Mortgage Law would not permit a lease to be registered unless it had six years or more to run. Accordingly on the 21st of October, 1899, he went before a notary public and made an instrument of writing which reads as follows:

### DECLARATION.

"That on the 23d day of June, in an instrument drawn up before this notary public, he entered into a contract of lease of the estate called 'Santa Cruz,' situated in the municipal jurisdiction of Bayamón, ward of Juan Sánchez, with its owner Emilio Montilla, in which contract of lease no duration of the said contract was fixed, leaving it to the will of the lessee, who might continue leasing the said estate as long as he might desire, under the condition that he should pay punctually the stipulated rent of 105 *pesos,* provincial money, then in circulation; and it now being to his interest to insure in an efficacious

manner and guarantee the rights which by virtue of the said contract of lease he might acquire, the term of duration of the said contract of lease being subject to the option of the party hereto.

"He hereby sets forth that he binds himself to continue the said contract and to the compliance with the obligation which he contracted by the same for a longer period of time than six years, beginning from the date of the execution of the said contract, it not being understood, however, by this that he waives the right given him in the said contract to continue leasing the same after the expiration of six years, so long as he continues paying the stipulated rent and complying with the other conditions of his contract. Thus he says, executes, and signs, after having read the same himself and ratified it; and I, the notary public, affix my seal and signature, certifying to the whole.— P. Van Syckel.—Mauricio Guerra."

Appellant's counsel assign as reasons for the nullity of this instrument: "1st. That the said instrument involved a contract by Van Syckel with himself two parties being necessary to the execution of a contract. 2d. That the said contract constituted an alteration of the original contract effected without the consent of Montilla, by one of the contracting parties to the same."

We must inquire into the nature of this instrument. Is it a mere declaration made by the lessee exercising an option given him in the lease, or is it a contract supplementary thereto? Chief Justice Marshal defines a contract to be "An agreement in which a party undertakes to do or not to do a particular thing." (*Sturges* v. *Crowninshield,* 17 U. S., 4 Wheaton 197.)

Chief Justice Taney later quotes this definition with the approval of the Supreme Court, in the celebrated case of the *Charles River Bridge* v. *Warren Bridge,* 11 Pet., 36 U. S., 572.

That eminent text-writer, Dr. Parsons gives virtually the same definition of a contract, following the authority of the courts, and saying: "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." (1 Parsons on Contracts, 5.)

Substantially the same definition is contained in the Civil

Code of Porto Rico, Book IV, Title II, which is copied from the Spanish Code.

Tried by these rules the statement made by Van Syckel before the notary cannot be regarded as a contract. It lacks both the necessary parties and a consideration. It neither increases nor diminishes the obligations of the lessor or the lessee. It only makes definite what was more indefinite, and renders the lease capable of registration. The declaration having been made in accordance with the option given in the lease and not being a contract, according to the authorities above quoted, of course it is not subject to the strictures applied to it in the brief of counsel, and the authorities quoted therein do not apply.

But does the declaration made by Van Syckel change the lease without the consent of the lessor? Let us see. The seventh section of the said lease reads as follows:

"Seventh. This contract not having any fixed period of duration, it is hereby expressly stipulated that so long as Van Syckel continues to pay the monthly rent Montilla is obliged to respect the contract, having no right to rent or sell to any other person the said estate, so leased, under the penalty of payment of an indemnity for such damages as may result to the said lessee, Mr. Van Syckel."

This clause left entirely within the determination of Van Syckel how long the lease should run. He could terminate it at any time by failure to pay rent, or otherwsie, but Montilla had no such power. This may have been an unwise provision for the lessor to insert in his lease, but we have no power to make or unmake contracts; when they are legal and fair they must stand as made by the parties themselves. The lessee could no more vacate the premises without giving the lessor two months notice after the execution of the declaration of the 21st of October, 1899, than he could have done so before that date. This obligation was made even stronger if possible by the latter instrument, at least it certainly was not weakened or impaired. It is not then an alteration of the contract

to exercise the choice which he had the power to do at any time; and even if it could be considered a change of the contract it worked no injury to the lessor.

But counsel for the appellant cite Law 3d, Title 10, of Book I of the *Novísima Recopilación* and decrees of the Spanish Cortes of 8th June, 1813, under which it is claimed that: "The leases of rustic estates for an undertermined period of time may be dissolved at the will of any of the parties, provided, that one notify the other one year in advance." This law was clearly repealed by the adoption of the Spanish Civil Code on 1st January, 1890, and again on 1st of March, 1902, when the present Civil Code was adopted in each of which a couple of chapters on leases may be found. (Rev. Stat. P. R. pp. 1092 to 1099 and repealing section on page 1181 of same volume.)

Then there existed no right on the part of the lessor to terminate this lease on one year's notice. No sufficient reason appearing why this declaration is illegal it cannot be annulled.

In regard to the second proposition set out by appellant's counsel claiming that the inscription of the lease was improperly made, it readily appears that it depends to a great extent on the previous point.

If that were well taken, of course, there would be no ground under paragraph 5, article 2, of the Mortgage Law to admit the lease to registration. But inasmuch as the declaration made by the lessee as to the term of the lease is considered to be valid the lease was properly admitted to registration and the inscription cannot now be disturbed.

Is there any sufficient reason to consider the judgment of the provisional court as illegal, without jurisdiction or void, as claimed by the appellant's counsel in the third of the propositions stated above? Whatever may have been the errors into which that court may have fallen and even though this court might reverse such a judgment, on appeal from a court

over which it had revisory jurisdiction, it cannot be disturbed in this collateral action except for fraud or want of jurisdiction. Nothing appears in the record to indicate any fraud practiced by the parties in the suit filed in the United States Provisional Court. The decree was rendered *pro confeso* on the pleadings presented, and no appeal taken as might have been done if desired.

The jurisdiction conferred on the provisional court was given by General Order No. 88, series of 1899, creating said court. An examination of that order will show that the court created had the same judicial powers as were vested in the circuit or district courts of the United States. No question is made of the power existing in the military governor to issue such an order and to create the court. As the question is not raised it is unnecessary to discuss it.

The provisional court having had jurisdiction both of the persons and the subject matter, its judgment duly rendered will not be here disturbed.

Under the fourth proposition maintained by counsel for the appellant the transfer made by Marxuach to Van Syckel is attacked and it is contended that the latter could not by this document be subrogated to the rights of the mortgagee. That instrument reads in full as follows:

"No. 149. In the city of San Juan, Porto Rico, United States of America, on the 16th day of March, 1900.

"Before me, Santiago R. Palmer, a notary public of the Association of Notaries of Porto Rico, residing in this city and with an office open in the house numbered 23, of Fortaleza street, appear, as party of the first part, Mr. José Eleuterio Marxuach y Echevarría, of lawful age, married, property owner, and a resident of this city, and, as party of the second part, Mr. Paul Van Syckel, of lawful age, married, a mechanical engineer, who declares himself to be a citizen of the United States of America, and residing in the town of Bayamón.

"The parties appearing herein, in my opinion, are possessed of the legal capacity necessary for the execution of this instrument of cession of mortgage credits, and declare:

"First. That the object of the present instrument is a landed es-

tate or cane plantation called 'Santa Cruz,' which is situated in the ward of Juan Sánchez, municipal jurisdiction of Bayamón, registry of property of this city; it contains 314 acres of land, equivalent to 113 hectares, 41 ares and 46 centares, and is bounded on the east by the estate 'Caridad,' which formerly belonged to Mr. José Escolástico Berríos, the Bayamón River dividing it on the north from the estate 'Santa Bábara,' belonging to Mr. Miguel López; on the west by the town and lands belonging to Mr. Juan Basilio Núñez; and on the south by the islet of the said Juan Basilio Núñez.

"Second. That Mr. José Eleuterio Marxuach is the owner of the three mortgage credits for the payment of which the above-described landed estate is pledged as a guarantee, and which mortgage credits are owing by Emilio Montilla y Valdespino, of lawful age, married, and a resident of this city, who constituted the same for the term, with interest on the principal and under agreements and contracts growing out of the following:

TITLES.

"Third. That the obligation secured by the three mortgages referred to having become due Mr. Marxuach, with the titles constituting the same, a certificate of the registrar of properties showing that the said mortgages are not recorded as cancelled in the day book, copy of the inscriptions of the other incumbrances upon the mortgaged estate, and that it had not been transferred to a third party; and with the instrument required by the provisions of article 128 of the Mortgage Law, the same being authenticated by the lawyer, Mr. Juan Hernández López, and for the purposes of the procedure designated as his agent, Mr. Emilio S. Ginorio, before the district court of this city, he began a suit to collect the said mortgage credits for 11,000 *pesos* principal, 963 *pesos* and 90 *centavos* interest due, and the costs, the court entering a decree on the 18th day of December, 1899, requiring Mr. Emilio Montilla y Valdespino to pay within the term of thirty days to Mr. José Eleuterio Marxuach the amount claimed, with notice that a public sale of the mortgaged property would follow if such payment were not made; notice of which decrees was given to the debtor, Montilla, on the 20th day of the said month and year, and in which state the foreclosure proceedings commenced are now found.

"Fourth. That during this proceeding Mr. Paul Van Syckel, on account of a certain contract of lease on the estate 'Santa Cruz,' filed a suit in the United States Provisional Court for the Department of

Porto Rico against the owner of the said estate, Mr. Emilio Montilla y Valdespino, and against his mortgage creditor, Mr. José Eleuterio Marxuach, the said provisional court rendered a decree on the 1st day of the present month, ordering among other things that Marxuach transfer to Mr. Van Syckel his rights as mortgagee against Mr. Emilio Montilla and the plantation 'Santa Cruz,' described in the said decree, which, translated and having been exhibited to me, reads as follows:

" 'Now it is considered, decreed and ordered that the defendant, José E. Marxuach do assign and cede to the said Pablo Van Syckel the note and mortgage for 10,500 *pesos* executed on the 15th of May, 1897, by said Emilio Montilla y Valdespino to the said José E. Marxuach, which said mortgage is a lien upon a certain tract of land described as follows: (the hacienda 'Santa Cruz,' as described in the bill of complaint and mortgage deeds) upon the payment by the said complainant, Pablo Van Syckel, to the said defendant, José E. Marxuach, of the sum of 11,643.43 *pesos,* provincial money, that being the amount due on the said note and mortgage at the date of this decree, and also the further sum of interest thereon at the rate of 10½ per cent per annum from the date of this decree to the time of payment.

" 'It is further considered, adjudged and decreed that upon the payment aforesaid being made the said defendant, José E. Marxuach, be and hereby is forever enjoined from in any way proceeding in the District Court of San Juan, Island of Porto Rico, and in all other courts, to enforce said mortgage in any way; and he is also likewise enjoined forever from carrying into effect in any way any and all agreements to be made with his co-defendant Emilio Montilla y Valdespino, to assist the latter in the sale of said property to the prejudice of the said complainant as lessee of the said property until the 23d day of June, 1903.'

"The above agrees literally with the translation presented to me by the parties to which I refer and return the same.

"In accordance with the same, they comply with the said order of the provisional court in the manner set forth in the following clauses:

### LIQUIDATION.

"Mutually agreeing, they proceed to liquidate the amounts which Mr. Marxuach is to receive for principal and interest, which they fix as follows:

"As principal, 11,000 *pesos,* current money, according to the dates on which the said mortgages were constituted; the money then current being of Mexican coinage, they discount 5 per cent for exchange into provincial currency, amounting to the sum of 10,450 *pesos,* provincial currency.

"As interest on the said principal from February, 1899, to February 28th of the present year, 1,193 *pesos* and 41 *centavos,* provincial money, which, added to the principal, make a total of 11,643 *pesos,* provincial currency, to which are added 54 *pesos* and 24 *centavos,* provincial currency, for interest from the first day of the present month to date, at the rate of 10½ per cent per annum, in accordance with the rate fixed by the provisional court, amounting to 11,697 *pesos* and 65 *centavos,* provincial money, net, with which both parties are satisfied.

### PAYMENT.

"Second. Said 11,697 *pesos* and 65 *centavos,* now before me and before the attesting witnesses, Mr. Paul Van Syckel delivers to Mr. Eleuterio Marxuach y Echevarría in bills of the Banco Español de Puerto Rico, 11,695 *pesos* and in silver money of Porto Rican coinage 2 *pesos* 75 *centavos;* being examined and counted by Mr. Marxuach, he receives the sum delivered to him, for which he gives a formal receipt in full to Mr. Van Syckel.

### CESSION.

"Third. For the sum received Mr. José Eleuterio Marxuach y Echevarría cedes and transfers to Mr. Paul Van Syckel the mortgage credits which result in his favor from the deeds and registrations above mentioned; in paragraph No. 2 of the present instrument, with their respective mortgage rights, the right to collect the interest due on the same and to become due, the right of indemnity for expenses and costs in the case of judicial claims and all other rights, principal or accessory, real and personal, which may belong to him against the mortgaged property and against the debtor, Mr. Emilio Montilla y Valdespino, without any reservation whatever.

### RESPONSIBILITY.

"Fourth. The vendor, Marxuach, acting in good faith, is responsible only for the existence and lawfulness of the credits, in accordance

with the provisions of article 1529 of the Civil Code in force in Porto Rico.

### EXPENSES.

"Fifth. All fees and expenses of this instrument, of its copy, registration, notification to the debtor, although the vendor may serve the same, and all other expenses growing out of the same, shall be defrayed by the vendee, Mr. Van Syckel.

### DOMICILE.

"Sixth. They appoint this city as a common domicile for all claims, notifications, citations and other private or judicial acts which may arise from the present contract, submitting themselves expressly to the jurisdiction of its judges and courts, waiving all distinct rights, whether personal or domicile.

### ACCEPTATION.

"Seventh. Mr. Paul Van Syckel accepts the cession and its effects with all the circumstances mentioned in this instrument.

### WARNINGS.

"I, the notary public, make known that I have warned the parties hereto that the present cession must be made known to the debtor of the credits ceded and the vendor will be responsible for any damages which the failure to comply with this requisite may be caused the vendee.

"That if a copy of this document be not recorded in the registry of property of this city it will not affect the rights of a third party, nor will the same be admitted in the tribunals, councils and government offices if the object of its presentation should be to prejudice a third party, and to assert the right of registration save in the two exceptional cases mentioned in article 389 of the Mortgage Law.

### EXECUTION.

"Thus Mr. José Eleuterio Marxuach y Echevarría and Mr. Paul Van Syckel grant before me, the notary public, and the attesting witnesses being Mr. Miguel Luis Arzuaga and Mr. Emigdio S. Gi-

norio, residents of this city. I read the present instrument to the grantor and witnesses, and advised them of the right which they had to read it for themselves, but they state that they are well informed of its contents, and the parties thereto ratify the same and sign, together with the witnesses, as to which and as to my acquaintance with the parties, as well as all else which I have assured or referred to in this public instrument, which I authenticate, in seven sheets of paper of the Notarial Association, numbered 21186 and the three following, I certify.—José Eleuterio Marxuach, Paul Van Syckel, Miguel L. Arzuaga, Emigdio S. Ginorio. Signed and sealed.—Santiago R. Palmer.

"On the date of the above instrument I issued a first copy of the same to Mr. Van Syckel, containing six sheets of paper of the association, numbered 22766 and following, to which I certify.—Palmer.

"It is the first copy, the same as its original, the contents of which may be found under the number 149 of my general protocol, in witness whereof and at the request of Mr. Emilio Montilla y Valdespino I issue the same on six sheets of paper in the city of San Juan, Porto Rico, on the 3d day of October, 1900.

"Corrected. The agreements. Testated. Of. Not valid. Signed, sealed.—Santiago R. Palmer. The impress of a seal."

The objections made by counsel for the appellant to the validity of this assignment of the mortgage, called in some of the briefs a cession, are two-fold.

1st. The consent both of the mortgagor, Montilla, and of the mortgagee, Marxuach, was necessary to the validity of the assignment or at least to create a subrogation.

2d. No distinct specification of a subrogation is made in the assignment and it is consequently powerless to effect a subrogation even though both mortgagor and mortgagee consented to it.

In support of their first objection counsel referred to sections 1126 and 1127 of the Civil Code which do not treat of subrogation, but of payment, and treat the assignment which Marxuach made of the mortgage, under direction of the provisional court, as if it were merely a receipt given by Van Syckel for the amount paid by him. The transaction was not

a simple payment and the sections of the Civil Code quoted have no application to the case under consideration.

Sections 1177 and 1178 of the Civil Code are also cited by counsel for appellant and read as follows:

"Section 1177. The subrogation of a third person in the rights of a creditor cannot be presumed, except in the cases expressly mentioned in this Code.

"In other cases it shall be necessary to prove it clearly in order that it may be effective.

"Section 1178. Subrogation shall be presumed—

"1. When a creditor pays another preferred creditor.

"2. When a third person, who is not interested in the obligation, pays with the express or implied approval of the debtor.

"3. When the person who is interested in the fulfillment of the obligation pays, without prejudice to the effects of the confusion with regard to the share pertaining to him."

These sections of the Civil Code would be certainly applicable if it were attempted to presume a subrogation of Van Syckel to the rights of Marxuach under the mortgage. But such is not the case here. No presumption is insisted on, but it is contended that the assignment of the mortgage by a deed duly executed proves the subrogation under article 152 of the Mortgage Law. That article reads as follows:

"Art. 152. A mortgage credit may be conveyed or assigned to a third person, totally or partially, provided it is effected by means of a public instrument, notice of which is given to the debtor, and that it is recorded in the registry."

This law is not contradicted by the Civil Code and is not repealed or modified thereby. The interests of the debtor or mortgagor are strictly safeguarded by the second clause and the assignee is protected by the third clause which subrogates him to all the rights of the assignor or the mortgagee. No consent of the debtor is necessary because his burdens are not increased nor his obligation extended. No distinct speci-

fication of the subrogation need be made in the instrument itself because the law makes the subrogation follow as a legal conclusion from the fact of the assignment itself. Nothing more is necessary than that the assignment shall be made by a public instrument of which the debtor has notice and which is recorded in the registry. It clearly appears that the subrogation was complete.

Fifth. Counsel for the appellant contend that this court should annul the foreclosure sale made at the suit of Van Syckel, after the mortgage had been transferred to him, claiming it to be the result of a conspiracy and based on a void judgment. If there was any conspiracy some greater proof of it should be afforded than appears in the record brought before this court. The bare formation of a partnership, and the registration of documents properly executed nor indeed any other regular and lawful acts done by a man or several men, in the effort to protect their rights or promote their pecuniary benefit, cannot be regarded as a conspiracy merely because the results prove detrimental to some other person. In the view which we take of the judgment rendered by the court, as heretofore indicated, it cannot be regarded as void so as to support the contention of counsel. Taking this view of the reasons assigned for its annulment we must allow the foreclosure sale to stand, and leave the rights acquired by the defendants under the same to remain undisturbed.

The sixth proposition, as to the illegality and want of effect of the various inscriptions of the different documents and decrees, would follow as a corollary from the previous ones, had they been maintained; but as they are not considered tenable, the inscriptions complained of must likewise be held valid. They stand or fall with the documents to which they relate.

The principal objection made by counsel to these inscriptions is to that of the lease which has been adverted to hereto-

fore.    We can do no more to justify that proceeding than to
refer to the opinion given in regard to the matter by the chief
justice of this court when the matter was before him on an
administrative appeal from the refusal of the registrar to
admit the lease to record.

That opinion has our entire and unqualified approval not-
withstanding the criticisms offered.    The letter of the mili-
tary commander which is brought into the record of this case
properly forms no part of it, and has received no consider-
ation.

This brings us to the seventh and last point made by the
distinguished counsel for Montilla in their printed brief.

Should the district court have treated this as an equitable
action, and passed on more of the questions arising in the
course of the litigation than those considered in the judgment
from which this appeal is taken?

By comparing the judgment of the district court with the
prayer set forth in the declaration it will sufficiently appear
that no material issue made in the pleadings was overlooked
or disregarded; and as far as can be seen article 258 of the
old Code of Civil Procedure was substantially followed.

The section of the Porto Rican statute on which the first
branch of this proposition is based reads as follows:

"When there is no statute applicable to the case at issue the court
shall decide in accordance with equity, which means that natural jus-
tice, as embodied in the general principles of jurisprudence and in
accepted and established usages and customs, shall be taken into con-
sideration."    (Civil Code, section 7, par. 2, Rev. Stat. P. R., p. 752.)

It is material here to enquire what was the nature of this
action in the court below, and how does it come to this court?
If it was an action at law in the trial court, it must so remain
in this court.    If it was a suit in equity when decided in the
court below, such it must here remain.    We cannot, under the
statutes of Porto Rico, or under any system of jurisprudence

with which we are acquainted, transpose a case from the law to the equity side of the docket after it has been tried, heard and decided, by the district court. Then let us examine the declaration by which this section was instituted and afterwards the proceedings and final judgment based thereon.

The material portions of the declaration read as follows:

"In view of all that has been said, I beg the court that considering this complaint as presented with its copies, to regard me as the representative of Mr. Emilio Montilla y Valdespino, and to please admit the same, ordering that it be heard and decided according to the procedure followed in an ordinary action, citing and fixing a time to Mr. José E. Marxuach, Mr. Pablo Van Syckel y Paul, and also the agricultural company, P. Van Syckel & Co., so that in the period of twenty days they may file an answer to the same; and finally to render a decision declaring null the public document of the 16th of March, 1900, inasmuch as the transfer of the mortgage credit constituted in favor of Marxuach upon the farm 'Santa Cruz,' and the public document of the 1st of June of the same year constituting the defendant company, in so far as it included as a mortgage credit a document which really was not such; also to nullify the inscriptions executed in the registry of property by virtue of said instruments; to declare that neither Pablo Van Syckel nor the firm 'P. Van Syckel & Co.' ever have been mortgage creditors of Don Emilio Montilla, as subrogated to the rights of Don José E. Marxuach, and therefore that said company has only a personal action against Sr. Montilla to recover from him the amount in which he may have been benefited by the payment that was made in his name by the partner Van Syckel to Marxuach; to nullify the action executory of the mortgage which said company prosecuted against my client; to nullify the adjudication made to said company of the farm 'Santa Cruz,' and also to nullify the inscriptions which may have been made in the registry of property by virtue of the adjudication; to declare extinguished according to law the mortgages constituted against the property 'Santa Cruz' in favor of Marxuach ordering the cancellation of the inscriptions of said mortgages to condemn 'P. Van Syckel and Company' to indemnify Montilla for the damages they may have caused on account of the executory action which was improperly instituted, and to the payment of the costs.

"1. Further prayer: I beg the court to hear at the proper time the

evidence in this suit, and I beg the court to consider this declaration as having been made.

"2. Further prayer: As the nullity of the executory mortgage action, which has been prosecuted by P. Van Syckel and Company against Don Emilio Montilla, is claimed in this suit, and therefore the nullity of the adjudication of the farm 'Santa Cruz' and of the inscriptions of the same in the Registry of Property of San Juan, it is necessary to apply article 88 of the Regulations of the Mortgage Law in force; and therefore—

"I beg the court that, with the promptness required by the case, a communication be issued through me to the Registrar of Property of San Juan advising him of the annulment which is claimed and ordering him that within the term prescribed by said article the corresponding marginal note of annulment be made to the inscription of the adjudication of the farm 'Santa Cruz,' which description is found in this complaint, to which reference should be made in the communication that may be issued.

"3. Further prayer: As Don José E. Marxuach and the agricultural company, 'P. Van Syckel & Company,' have their domicile in this city, a letter mandatory should be issued through me to the Municipal Court of San Francisco for their citation; that is to say, the citation of the company defendant with any of the managers of the firm 'Sobrinos de Ezquiaga,' as they are also members of the agricultural company:

"I beg the court to please order the issuance referred to ordering the letter mandatory to be delivered to me.

"4. Further prayer: Mr. Paul Van Syckel should be summoned in his own right, and as I do not know his actual residence the citation must be made by means of edicts, which should be published in any newspaper of this city; wherefore I pray the court to give orders to the secretary in order that he issue and deliver to me, for its insertion in any newspaper of this city, the edict for the citation of Mr. Paul Van Syckel y Paul."

This like all other suits in the courts of Porto Rico, must be regarded as an action under the codes, and is neither, strictly speaking, an action at law nor a suit in equity. There is no great difference in our former Code of Procedure, and still less under the present, between such actions and those brought under the California Code. What Mr. Pomeroy says

of actions under that Code will apply in some degree to ours, to wit:

"All the common-law forms of action are abolished, and one civil action is established for all remedial purposes; the proceedings in this civil action, however, may be either (1) ordinary or (2) equitable. The plaintiff may prosecute his action by equitable proceedings in all cases where courts of chancery, before the adoption of the code, had jurisdiction, and must so proceed in all cases where such jurisdiction was exclusive. In all other cases the plaintiff must prosecute his action by ordinary proceedings. The plaintiff indicates by the formula 'In ordinary proceedings,' or 'In equitable proceedings,' at the commencement of his petition or complaint, to which class the action belongs. The provisions of the code regulating the prosecution of actions apply to both kinds of proceedings unless the contrary expressly appears. In fact, the only real distinction between them is that they are to be placed upon different dockets of the court, so that the suits of the one class will be tried by the jury, while those of the other class will be tried by the judge without a jury, and the evidence in equitable proceedings may be taken by deposition instead of by oral examination in open court." (Pomeroy's Code Remedies, p. 6.)

The last paragraph in regard to juries, of course, has no application here, where we have no juries in civil cases.

The only reference to equity made in our codes is to be found in section 7 of the Civil Code, adopted on the 1st of March, 1902. Said section reads as follows:

"When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration."

This cannot be held to adopt or establish a system of equity here. A system of equity jurisprudence, such as that administered in the federal courts of the United States, and in some of the state courts, has no place in the system of laws enforced and practiced in the Insular courts of Porto Rico. It is to be

presumed that counsel for appellant only intended to insist that the court should apply to this case the principles of justice universally recognized and approved by the enlightened consciences of all upright and law-abiding men.

But if the distinguished counsel really contend that the principles of equity jurisprudence should be applied to this case, they must bring their client within its rules by first causing him to do equity in order that he may seek it with success. This would require him to offer to Van Syckel the money paid to Marxuach for the assignment of the mortgage on the plantation "Santa Cruz" with all interest due thereon. Nothing short of this would be just, and should the appellee refuse to receive it the appellant should deposit it in court subject to his claim. Then he might demand that the mortgage should be cancelled and possibly be in a position to attack the lease if he so desired. Until this first step is taken it is unnecessary to trace out the path which he should subsequently follow.

But we are not required by the section of the Civil Code cited to apply the principles of equity except in cases where no written law exists. In our view of this case the written laws of Porto Rico are ample to direct us in the determination of the rights of the parties. The courts have given much time and attention to the study and construction of those statutes and their application to the various cases which have been brought by the parties engaged in this litigation, and no material error is found in the judgment of the district court presented to us for review and which we are asked to reverse. Whatever hardship the appellant may have suffered is to be attributed not to the expression of others nor to the errors of courts, but to his own improvidence and lack of business foresight. Against these this court is powerless to relieve.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras, and Wolf concurred.